OPINION
{¶ 1} Appellant, Valdon Gorham, appeals his conviction in the Butler County Court of Common Pleas for vehicular assault.
 {¶ 2} In the early morning hours of Christmas Day in 2004, after a snowfall, appellant was driving a Jeep Cherokee in the northbound lane of Hamilton Cleves Road near Ross, Ohio. A Toyota Tacoma pick-up truck driven by Timothy Caine and containing four additional passengers was traveling in the southbound lane. The vehicles collided. Most of the *Page 2 
occupants suffered head injuries and lacked sufficient recollection of the accident to provide an account of the collision. One uninjured passenger in the Tacoma testified that she recalled seeing headlights coming toward the Tacoma and turning left in front of the Tacoma (as if into a driveway) just a few seconds before the impact. Another passenger of the Tacoma testified that the vehicle was traveling at approximately 45 m.p.h. shortly before the accident, and she recalled no change in speed immediately prior to the accident.
 {¶ 3} Accident reconstructionist Jay Young testified at trial that the evidence he gathered from the scene of the accident indicated that the Tacoma had hit the Cherokee broadside on the passenger side of the vehicle in the southbound lane of the road. He indicated that the Cherokee was traveling somewhat faster than the Tacoma at the time of the accident, but probably at around the posted speed of 55 m.p.h. Young testified that he believed that the Cherokee probably drifted toward the southbound lane, causing appellant to steer the Cherokee back into the northbound lane, and overcorrect again. The vehicle turned sideways with the passenger side of the Cherokee facing the southbound lane of traffic, at which time the vehicle was struck by the Tacoma driven by Caine. The Tacoma was brought to a halt in its lane and turned slightly toward the berm of the southbound lane by the impact. Although the vehicles were of similar weight, because of its faster speed, the Cherokee went airborne, flipped over the Tacoma, and landed in the ditch next to the southbound lane but behind the Tacoma.
 {¶ 4} Young spoke to appellant on the telephone approximately two weeks after the accident. Young testified at trial that appellant indicated during the telephone conversation that the vehicle had a mechanical defect that caused the windshield to become covered, and that he had to stop the vehicle to manually clear the windshield. Young testified that appellant had stated that, at the time of the accident, he had stopped the Cherokee on the road to clear the window, and that, while stopped, he had been struck from behind. Young testified that the *Page 3 
scenario presented by appellant was not a credible account of the accident because the evidence at the scene did not support it. There was no evidence that appellant's vehicle had been hit from the rear since the impact damage was to the passenger side of the Cherokee. Further, the momentum of the accident was in the direction of the berm of the southbound lane behind the point where the Tacoma was stopped, indicating that appellant's vehicle was traveling faster than and in the direction of the Tacoma at the moment of impact. Furthermore, witness accounts substantiate the findings that appellant's vehicle was in fact moving.
 {¶ 5} On the day before the trial, the prosecutor provided appellant's trial counsel with supplemental discovery, including a report of the Miami Valley Crime Laboratory that indicated that blood tests performed on Caine showed that he had tested positive for benzodiazepines on the night of the accident. The state moved the trial court to grant a motion in limine to prohibit this evidence from being presented at trial, and the trial court granted the motion. Appellant's trial counsel requested a continuance in order to have the opportunity to determine whether the results of the drug test were relevant to the accident. The trial court denied the request for a continuance.
 {¶ 6} After a trial to the bench, appellant was found guilty on four counts of vehicular assault under R.C. 2903.08(A)(2)(b). The trial court determined that, at the time of the accident, appellant was driving while his license was suspended, making the offense a third-degree felony under R.C 2903.08(C)(2). As a result of the penalty enhancement provisions of R.C. 2903.08(D)(2), appellant was subject to a mandatory prison term. Appellant was sentenced to one year in prison for each count, to be served concurrently.
 {¶ 7} Appellant appeals his conviction, citing two assignments of error. For the reasons that follow, we reverse the decision of the trial court and remand the case for further consideration. *Page 4 
 {¶ 8} Appellant's First Assignment of Error:
 {¶ 9} "THE COURT ERRED IN FAILING TO GRANT DEFENDANT A CONTINUANCE."
 {¶ 10} A trial court has broad discretion in determining whether to grant or deny a continuance. State v. Unger (1981), 67 Ohio St.2d 65,67. An appellate court may not reverse the denial of a continuance absent an abuse of discretion. Id. at 67. When a continuance is requested, the competing interests to be considered are the court's right to control its own docket, the parties and the public's interest in the prompt and efficient administration of justice, and the potential prejudice that could result to the moving party if the request is denied. Id. at 67. In balancing these interests, a court considers such things as: the length of the delay requested; whether other continuances have been requested and received; the inconvenience to litigants, witnesses, opposing counsel and the court; whether the requested delay is for legitimate reasons or whether it is dilatory, purposeful, or contrived; whether the defendant contributed to the circumstance that gave rise to the request, and any other factors relevant to the particular circumstances of the case. Id. at 67-68.
 {¶ 11} In the case below, the trial court determined that a continuance was unwarranted because the evidence disclosed by the prosecution was not relevant to appellant's defense. The prosecutor stated that the expert testimony would show at trial that Caine was driving his vehicle in his lane of travel, that he never deviated from that lane, and that his vehicle was struck within that lane by appellant's vehicle. There was no evidence to indicate impairment. The defense had the opportunity to consult with an accident reconstructionist, and the reconstructionist was not able to offer an alternate theory of the accident favorable to the defense. The trial court determined that denying the defendant-appellant's request for additional time to consult a reconstructionist again, and perhaps a forensic toxicologist, would not result in prejudice to the defense because there was no *Page 5 
credible alternate theory of the accident based on the evidence.
 {¶ 12} We find that the trial court did not abuse its discretion. Arguments on the motion for continuance occurred on the day the trial was set to begin. Eighteen months had passed since the accident. The defense had obtained at least one prior continuance. The trial court has an interest in controlling its own docket and ensuring the prompt and efficient administration of justice. Unger at 67. The trial court denied the motion for a continuance upon a determination that the potential for prejudice to the defense was minimal given the uncontroverted evidence of the circumstances of the accident. See id. As such, we find that the trial court did not abuse its discretion when it denied the motion to continue the trial.
 {¶ 13} Appellant's Second Assignment of Error:
 {¶ 14} "DEFENDANT'S CONVICTION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AND CONTRARY TO LAW."
 {¶ 15} A challenge to the manifest weight of the evidence attacks the credibility of the evidence. State v. Thompkins, 78 Ohio St.3d 380, 387,1997-Ohio-52. A court considering whether a conviction was against the manifest weight of the evidence must review the entire record, weighing the evidence and all reasonable inferences, and consider the credibility of witnesses. State v. Hancock, 108 Ohio St.3d 57, 2006-Ohio-160, ¶ 39. In resolving conflicts in the evidence, the reviewing court must determine whether the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed. Id., citing State v. Martin (1983), 20 Ohio App.3d 172, 175.
 {¶ 16} Appellant first argues that the trial court's determination that he acted recklessly in causing the crash was against the manifest weight of the evidence. However, evidence was presented at trial that there was patchy ice on the roads, it was exceedingly cold, and the area was foggy. Appellant admitted to a testifying officer that the vehicle he was driving was mechanically faulty, causing his vision to be obscured while he was driving. The *Page 6 
reconstructionist indicated that appellant was traveling at close to the posted speed at the time of the accident despite hazardous driving conditions. The reconstructionist also testified that, in his expert opinion, appellant experienced an oversteer and entered the driving lane of oncoming traffic. The account of the passenger of the vehicle that was struck by appellant corroborated the reconstructionist's determination of the sequence of events. We cannot say that the trier of fact lost its way and created a manifest miscarriage of justice in determining that appellant acted recklessly. As such, the finding is not against the manifest weight of the evidence.
 {¶ 17} Appellant next argues that it was against the manifest weight of the evidence for the trial court to find that he was driving under suspension. Upon a review of appellant's driving record, we find that the trial court's determination that appellant was driving under suspension was against the manifest weight of the evidence.
 {¶ 18} Appellant was under a suspension from April 16, 2004 to July 15, 2004. This was a class E administrative suspension for failure to show proof of financial responsibility in accordance with the provision of R.C. 4509.101. A class E suspension lasts for three months. R.C.4510.02(A)(5). In order to have his license reinstated, appellant was required to pay a reinstatement fee and continuously maintain proof of financial responsibility. R.C. 4509.101(A)(5). With respect to the requirement of continuously maintaining financial responsibility, R.C.4509.45(A) states that a driver may comply in one of several methods, including a bond. Appellant had obtained such a bond. Under R.C.4509.45(B), a person must maintain such proof for three years following the imposition of a class E suspension. Appellant's driving record reflected that, in order to be in compliance with the statutory requirements of 4509.45(B), the Financial Responsibility Act proof would be required from April 16, 2004 to April 16, 2007. Appellant was in compliance with this requirement. Appellant's driving record also reflected that he had failed to reinstate his license following the *Page 7 
suspension because he had not paid the reinstatement fee.
 {¶ 19} Based on the testimony of two individuals with experience reading and interpreting driving records, the trial court determined as a matter of law that, upon the expiration of the suspension imposed, appellant's license remained suspended and would so remain until he met the requirements for reinstatement. But this is not the law in Ohio. Failing to reinstate a license following the expiration of the suspension is a minor misdemeanor under R.C. 4510.21. Maintaining proof of financial responsibility and paying the reinstatement fee were conditions precedent to the restoration of appellant's license, not conditions precedent to the termination of the suspension. See State v.Uskert, 85 Ohio St.3d 593, 596, 1999-Ohio-289 (finding that, in the context of an administrative suspension for driving while intoxicated, "proof of responsibility and payment of the reinstatement fee * * * are * * * conditions precedent to the return of the license by the registrar"). The suspension terminates automatically. We find that the testimony regarding interpretation of the driving record was inaccurate or ambiguous, and therefore not credible. As such, the trial court's determination that appellant was driving under suspension is clearly and manifestly against the weight of the evidence.[1]
 {¶ 20} On this basis, we reverse the judgment of the trial court and remand this matter for further proceedings according to law and consistent with this opinion. On remand, the trial court is not required to hold a new trial but may enter a conviction based on the appropriate inferior degree of the indicted offense that does not include the specification of driving under suspension.
YOUNG, P.J. and WALSH, J., concur.
[1] We note that appellant has not argued that the evidence was insufficient to support the conviction. *Page 1